# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOHN WALKER-ABRAMS, | Case No.: 3:12-cv-00021-MMD-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 80 |
| BACA, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 80, 80-1 to 80-11, 82-1 to 82-3, 85-1 to 85-3.) Plaintiff filed a response. (ECF No. 88.) Defendants filed a reply. (ECF No. 89.)

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Third Amended Complaint (TAC), ECF No. 47.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*)

The court screened Plaintiff's TAC and allowed him to proceed with the following claims: (1) an Eighth Amendment conditions of confinement claim in Count I against Baca, Ward, Walsh, Mooney, Mattice, and Dzurenda, based on allegations that there was unhealthy air

in the ventilation system where he lives, he was exposed to asbestos, there were broken windows with shards of glass and broken doors with exposed metal that could be used as weapons, and moldy and infested ceilings, and Defendants were aware of these conditions yet failed to remedy them; (2) an Eighth Amendment deliberate indifference to serious medical needs claim in Count II against Dr. Naughton regarding treatment of his high blood pressure; (3) an Eighth Amendment deliberate indifference to serious medical needs claim in Count II against Sorich based on allegations that Sorich knew Plaintiff was sick and he had a doctor's order to be at the infirmary and a nurse was expecting him, but Sorich refused to permit Plaintiff to be treated, leading to prolonged sickness; (4) a retaliation claim in Count II against Sorich based on allegations that Sorich threatened to bring disciplinary charges against Plaintiff after Plaintiff asked Sorich for a grievance form; (5) a retaliation claim in Count II against Joncas and Sepulveda based on allegations that they threatened Plaintiff would become a "point of interest" if he kept complaining about how officers did their jobs, and they turned his mattress on the floor and dumped his property and left a grievance on top after he had requested one; (6) an Eighth Amendment conditions of confinement claim against Walsh in Count III based on allegations that there were vermin and mold in the dining hall that Walsh was aware of yet failed to remedy. (ECF No. 48.) Sepulveda was subsequently dismissed without prejudice under Federal Rule of Civil Procedure 4(m). (ECF No. 73.)

Defendants move for summary judgment, arguing: (1) Plaintiff failed to exhaust administrative remedies with respect to his claims in Counts II and III; (2) Defendants were not deliberately indifferent to Plaintiff's conditions of confinement; (3) Walsh did not personally participate in Count III; (4) Defendants were not deliberately indifferent to Plaintiff's serious

medical needs; (5) Defendants did not retaliate against Plaintiff; and (6) Defendants are entitled to qualified immunity.

In his response, Plaintiff states that he is voluntarily withdrawing his retaliation claims against Sorich and Joncas, and asks for the dismissal of those claims. The court recommends granting Plaintiff's request; therefore, the court's analysis will only include the Eighth Amendment conditions of confinement and deliberate indifference to serious medical needs claims against Baca, Dzurenda, Mooney, Mattice, Dr. Naughton, Sorich, Walsh, and Ward.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

1   one party must prevail as a matter of law"). In considering a motion for summary judgment, all

2   reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

3   *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

4   *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

5   nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

6   477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

7   determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

8   *Anderson*, 477 U.S. at 249.

9          In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

10   "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

11   come forward with evidence which would entitle it to a directed verdict if the evidence went

12   uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

13   the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

14   *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

15   omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

16   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

17   an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

18   party cannot establish an element essential to that party's case on which that party will have the

19   burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

20          If the moving party satisfies its initial burden, the burden shifts to the opposing party to

21   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

22   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

23   dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Discovery**

In his response, Plaintiff states that discovery was never completed because numerous

requests for documents and interrogatories were left unaddressed. Plaintiff requests an

opportunity to complete discovery before finally opposing Defendants' motion for summary

judgment.

Magistrate Judge William G. Cobb issued an initial scheduling order gave the parties

until January 18, 2021, to complete discovery, and any discovery motions were to be filed by

February 2, 2021, and were required to be preceded by a good faith effort to meet and confer to

resolve any issue(s). (ECF No. 23.) The discovery completion deadline was subsequently

extended five more times at Plaintiff's request, with the last extension giving the parties until

February 15, 2022, to complete discovery. (*See* ECF Nos. 27, 30, 36, 44, 59) 1, 2, 3,4, 5

As a result of Judge Cobb's retirement, the case was reassigned to the undersigned as of

January 24, 2022. (ECF No. 75.) Plaintiff subsequently filed a sixth motion for an extension of

the deadlines because he had been placed in quarantine due to Covid-19. (ECF No. 76.) The

court granted Plaintiff's motion and extended the discovery completion deadline to April 18,

2022, with dispositive motions due by May 18, 2022. (ECF No. 77.) Defendants filed their motion for summary judgment on May 18, 2022. (ECF No. 80.)

If Plaintiff felt Defendants' discovery responses were deficient, his remedy was to timely file a motion to compel. At no time between the issuance of the initial scheduling order and the filing of Defendants' motion for summary judgment did Plaintiff file a motion to compel asserting that Defendants had not produced requested documents or properly responded to interrogatories.

In addition, a party seeking denial of a motion for summary judgment on the basis that he needs to conduct additional discovery in order to oppose the motion must "show[ ] by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition[.]" Fed. R. Civ. P. 56(d). "A party seeking additional discovery under Rule 56(d) must 'explain what further discovery would reveal that is essential to justify his opposition to the motion[ ] for summary judgment.'" *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (quoting *Program Eng'g, Inc. v. Triangle Publ., Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980)).

Plaintiff's declaration merely states that he was not allowed to conduct and complete discovery; however, he does not address what specific discovery he needs to conduct, or how that discovery is essential to oppose Defendant's motion for summary judgment.

Therefore, Plaintiff's request to deny or hold in abeyance Defendants' motion for summary judgment under Rule 56(d) should be denied.

**B. Exhaustion- Counts II and III**

Defendants argue that Plaintiff failed to exhaust administrative remedies with respect to Counts II and III, which contain Plaintiff's medical care claims against Dr. Naughton and Sorich, his retaliation claims against Sorich and Joncas, and the conditions of confinement claim against

Walsh about the vermin and mold in the dining hall. Plaintiff has requested to voluntarily withdraw the retaliation claims against Sorich and Joncas; therefore, the court's exhaustion inquiry will focus on the medical care claims against Dr. Naughton and Sorich in Count II and the conditions of confinement claim against Walsh in Count III.

### 1. Standard

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id at 1168.*

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that

impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process)).

### 2. Administrative Regulation (AR) 740

AR 740 contains NDOC's grievance process, and governs the exhaustion of administrative remedies within NDOC. Generally, an inmate must complete three levels of a grievance to exhaust administrative remedies: informal, first and second levels. (ECF No. 80-8.)

### 3. Analysis

Defendants provide a copy of Plaintiff's inmate grievance history which demonstrates Plaintiff did not file a grievance about his claims of deliberate indifference to serious medical needs against Dr. Naughton or Sorich. Nor does it reflect that he filed a grievance concerning vermin and mold in the dining hall. (ECF No. 80-7.)

In his response, Plaintiff states that he lost a lot of his grievance copies, inmate request forms, and legal records when he was admitted to the hospital on December 2, 2020, because he was paroled from the hospital on December 28, 2020. (ECF No. 88 at 12 ¶ 14.) He further states he was not provided the entirety of his grievance history when requested, and he has grievances that were submitted and never answered and that are the subject of a civil rights complaint (3:15-cv-00608-MMD-WCG). He further states that NNCC has a history of retaliation or throwing grievances away and claiming they were never submitted, or refusing to respond. (ECF No. 88 at 13 ¶ 18.)

Plaintiff acknowledges he has no proof he filed grievances for Count II, but he says the copies were lost when he was transferred to federal prison. (ECF No. 88 at 14 ¶ 18.)

Plaintiff has not presented *evidence* that he did in fact file a grievance concerning his claims in Counts II and III, or that the grievance process was unavailable to him. First, Plaintiff

states that copies were lost when he was transferred to federal prison, but he never actually states that he filed a grievance on the issues that are the subject of Count II, or when he did so. Moreover, he does not explain why, if he did file such grievances, they are not reflected in his inmate grievance history.

Second, Plaintiff generally claims that NNCC has a history of retaliation and throwing grievances away or failing to respond to grievances, but he provides no specific evidence regarding this occurring. Plaintiff states that this is the subject of a lawsuit, case 3:15-cv-00608-MMD-WCG; however, this case concerned Plaintiff's allegations of failure to protect him from violence at the hands of another inmate, and it did not concern NNCC's grievance process. Moreover, if a grievance is not given a timely response, an inmate's remedy under AR 740 is to move on to the next level.

Finally, Plaintiff's response does not assert that he ever filed a grievance with respect to the claim against Walsh in Count III regarding the dining hall. It is Plaintiff's burden to point to the specific evidence that supports his argument. Buried in Plaintiff's exhibits is an inmate request form addressed to Walsh that claims he wrote a grievance about the issues in the dining hall; however, the request form is not signed or otherwise marked received by anyone in the prison. (ECF No. 88-1 at 68.) Moreover, the request form is followed by informal, first, and second level grievance forms; however, the informal and second level grievance forms are completely illegible, including the dates, and are not accompanied by any responses. (ECF No. 88-1 at 70-72.) As such, the court cannot determine from these documents that Plaintiff exhausted his administrative remedies as to his claim against Walsh about the dining hall.

Plaintiff has not demonstrated that he exhausted administrative remedies or that administrative remedies were unavailable to him. Therefore, Defendants' motion for summary

1 judgment should be granted as to the medical care claims against Dr. Naughton and Sorich in

2 Count II and the conditions of confinement claim against Walsh in Count III.

3     The court will now turn to its analysis of the remaining claim conditions of confinement

4 claims in Count I.

5 **C. Count I**

6     **1. Eighth Amendment Standard**

7     The Eighth Amendment prohibits the imposition of cruel and unjust punishment. U.S.

8 Const. amend VIII. "It is undisputed that the treatment a prisoner receives in prison and the

9 conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth

10 Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511

11 U.S. 825, 832 (1994).

12     Although conditions of confinement may be restrictive and harsh, they may not deprive

13 inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S.

14 337, 347 (1981). Prison officials must provide prisoners with "food, clothing, shelter, sanitation,

15 medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986),

16 *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). "The

17 circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in

18 determining whether a constitutional violation has occurred. *Johnson v. Lewis*, 217 F.3d 726, 731

19 (9th Cir. 2000).

20     Where an inmate alleges injuries stemming from unsafe conditions of confinement,

21 prison officials may be held liable only if they acted with "deliberate indifference to a substantial

22 risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate

23 indifference standard involves an objective and subjective component. First, the alleged

deprivation must be, in objective terms, sufficiently serious. *Farmer*, 511 U.S. at 834 (citation omitted). Second, the prison official must know of and disregard a risk to an inmate's health or safety. *Id*. at 837.

### 2. Analysis

In Count I, Plaintiff alleges that the conditions within housing unit two of NNCC deteriorated to the point that they presented a threat to Plaintiff's physical and mental well-being. Again, this claim is proceeding against Baca, Ward, Walsh, Mooney, Mattice, and Dzurenda. The subject matter of this claim includes: (1) the ventilation system; (2) unrepaired security glass windows; (3) broken doors with large pieces of metal torn off; (4) parts of the ceiling had fallen in and contain mold, mildew, rodent, and pigeon droppings; (5) asbestos that had not been properly removed.

Defendants argue that Plaintiff cannot show the conditions were sufficiently serious, and they were not deliberately indifferent because NNCC was maintained on a regular basis.

### a. Ventilation System

First, Plaintiff alleges that the ventilation system in unit two has bird feces, feathers, mildew, black mold, dirt, dust and other debris, such that the air being blown through the ductwork is so polluted that it has stained the walls and ceilings around the vents brown and black. Plaintiff claims that he wrote grievances, request forms (known as "kites") and medical kites, but no action was taken. Plaintiff alleges that he spoke to or wrote to Baca, Walsh, Ward, Mattice, Mooney, and Dzurenda, but they failed to remedy the problem. Plaintiff avers that there are several employees assigned office space within unit two who had air filters taped over their vents with packing tape; however, filters were not provided for the areas occupied by inmates. Plaintiff asserts that those filters turned dark brown within three weeks.

According to Defendants, NDOC maintenance staff clean the vents and roofs of every NNCC building at least two to three times a year. (Baca Decl., ECF No. 80-2 ¶ 4; Hoefling[1] Decl., ECF No. 80-3 ¶ 9.) Pigeons left waste/feces on the roofs of NNCC's housing units, but this was cleaned by maintenance staff, and waste/feces was not left in the housing units. (Baca Decl., ECF No. 80-2 ¶.) Air filters are changed out quarterly, unless air conditions dictate otherwise, such as when there are wildfires. (Hoefling Decl., ECF No. 80-3 ¶ 11.)

According to Hoefling, if there is a maintenance problem, the NDOC employee who discovered the problem will send an email request to the facility work order email address, and maintenance staff will respond to the emails. (Hoefling Decl., ECF No. 80-3 ¶6.)

There was an email sent on January 24, 2019, requesting unit two roof pigeon feces cleaning. The description of the email states: "When it rains or snows, you can see the air handler blowing pigeon feces through the vents, leaving a dark residue." (Hoefling Decl., ECF No. 80-3 ¶ 8(l).)

In his declaration, Plaintiff states that he spoke with Mooney, Joncas[2], Ward, Buchanan[3], Baca and Mattice about the pigeon feces with mold and dirt being blown through the vents. (ECF No. 88 at 10 ¶ 6.) He was directed to assist with the taping of the air filters over the vents in the offices in the unit in May of 2018. (ECF No. 88 at 10-11 ¶¶ 7, 9.) He showed Baca the vents that were blowing pigeon feces and where the ceiling was stained around the vents, as well as the dirty air filters. (ECF No. 88 at 10-11 ¶ 8.) Plaintiff claims that Baca said he would take up the issue with maintenance, and Baca told him they did not have enough air filters for the inmate

---

[1] Zachary Hoefling is employed by an Administrative Services Officer (ASO) at NNCC, and part of his position requires supervision of support services, including maintenance. (ECF No. 80-3.)

[2] Joncas is not named a defendant in Count I.

[3] Buchanan is not named a defendant in Count I.

dorm. (*Id*.) There were no filters taped over the vents in the inmate living areas. (ECF No. 88 at 11 ¶ 9.) Plaintiff filed a grievance on July 9, 2018, asserting that the vents were spewing mold spores, rodent feces, dirt, and pigeon feces. (ECF No. 88-1 at 38.)

Buchanan responded to the grievance that according to NNCC maintenance, the roofs were being cleaned "to avoid the HVAC issues you are complaining of" and the air handlers are turned off during cleaning. (ECF No. 88-1 at 44.)

In his first level grievance, Plaintiff reiterated his claim that the vents were spewing dust, mold, pigeon feathers and feces, and the ceiling was dark brown to black around the vents. (ECF No. 88-1 at 39-41.) Baca responded at the first level, that NNCC maintenance staff clean the roofs of the units two to three times a year, and this was just recently completed in November of 2018. (ECF No. 88-1 at 45.)

Plaintiff repeated his claims about the ventilation system in his second level grievance. (ECF No. 88-1 at 42-43.) Wickham responded at the second level that there had been construction, repairs, remodeling and cleaning in Plaintiff's unit, and there were logs and work orders that provide information and proof that the work is being done. (ECF No. 46.)

Plaintiff provides affidavits from other inmates attesting to the discharge from the vents and the staining on the ceiling. (ECF No. 88-1 at 62-67.)

Plaintiff has created a genuine dispute of material fact as to the condition of the ventilation in his unit and whether enough was being done to address the issue. However, Plaintiff only raises an issue of fact with respect to Baca, Ward, Mooney, and Mattice. He provides no evidence that he notified Walsh or Dzurenda of the issues with the ventilation in his unit. Therefore, Defendants' motion for summary judgment should be denied as to this aspect of

his Eighth Amendment conditions of confinement claim as to Baca, Ward, Mooney, and Mattice, but granted as to Walsh and Dzurenda.

### b. Broken Windows

Second, Plaintiff alleges that throughout unit two there were broken security glass windows that had been left unrepaired for up to four years. Broken glass had been left on the window ledges and on the floor, resulting in hands and feet being cut, and the large shards of glass could be used as weapons or placed in food.

Baca states that broken windows are fixed on a regular basis at NNCC. The housing unit windows at NNCC require a special safety glass. Replacement of this glass took longer than 24-48 hours, but typically took no longer than a week to replace. (Baca Decl., ECF No. 80-2 ¶¶ 8-9.) Between January 2018 and June 2019, several emails were sent to maintenance regarding broken/cracked windows: an October 10, 2018 email reported a broken window in Unit 2, B-Wing Dorm 7; a January 14, 2019 email reported a broken window in Unit B-Wing Dorm 7; a January 16, 2019 email reported a cracked window in Unit 2 B-Wing Dorm 7 and in the re-entry office. (Hoefling Decl., ECF No. 80-3 ¶¶ 8(c), (h), (j)).

In his declaration, Plaintiff states that he spoke with Mooney, Joncas[4], Ward, Buchanan[5], Baca, and Mattice about the broken windows, and he showed Baca the broken glass windows in dorms 3, 6 and 7, and pointed out the large plate glass window in the officer's station that he had helped to do an emergency repair on by taping the cracked glass window. (ECF No. 88 at 10-11 ¶¶ 6, 8.) Plaintiff presents a discovery response from Baca where he admits that some security glass was not repaired immediately because of the availability of the glass. (Baca response to

---

[4] Again, Joncas is not named a defendant in Count I.

[5] Baca is not named a defendant in Count I.

interrogatory 10, ECF No. 88-1 at 11.) In his grievance, Plaintiff reported that the security glass window in Dorm 7 had been shattered for three months and was held in place with clear tape that allowed shards of glass to fall to the floor that had cut Plaintiff and others. (ECF No. 88-1 at 38.)

Buchanan responded to the grievance that maintenance was aware of the broken window and a work order had been submitted. (ECF No. 88-1 at 44.)

In his first level grievance, Plaintiff again asserted that the glass had been broken and held together with tape for months, and he had cut himself on shards of glass that had fallen to the floor. (ECF No. 88-1 at 39-41.) Baca responded at the first level, acknowledging there were still windows in the unit that needed to be replaced, and NNCC maintenance was aware and had ordered the replacement materials and were waiting for the materials to be approved and supplied. (ECF No. 88-1 at 45.) Plaintiff repeated his assertion that windows had been broken and left unrepaired in his second level grievance. (ECF No. 88-1 at 42-43.) Wickham responded to the second level grievance by stating that the work was being done. (ECF No. 88-1 at 46.)

Again, Plaintiff has raised a genuine dispute of material fact as to the existence of broken/cracked windows and associated shards of glass, whether they presented a safety hazard, and whether enough was being done to address this issue. However, he only raises a genuine dispute of material fact with respect to Mooney, Ward, Baca, and Mattice. He provides no evidence that he notified Walsh or Dzurenda of the issues with the windows. Therefore, Defendants' motion for summary judgment should be denied as to this aspect of his Eighth Amendment conditions of confinement claim with respect to Mooney, Ward, Baca, and Mattice, and granted as to Walsh and Dzurenda.

### c. Broken Doors

Third, Plaintiff avers that there were broken doors containing large pieces of metal that could be torn off and used as weapons.

Defendants acknowledge that emails were sent between January 2018 and June 2019 regarding issues with doors in unit 2; however, there was no mention in the emails of dangerous pieces sticking out of the doors. There were emails about one door not closing all the way; the fire door in B-Wing Dorm 2 was beeping due to the battery dying; a door in dorm 6 B-Wing was coming part; the B-wing dorm 6 bathroom doorknobs had fallen off; the door between Dorms 5 and 6 was sticking, making it difficult to open; the A-Wing Dorm 3 stop was inoperable; and the Dorm 5 and 6 door would catch and get stuck. (Hoefling Decl., ECF No. 8-3 ¶8(a), (b) , (e), (f), (g), (i), (k).)

In his grievance, Plaintiff complained that the doors did not work and had sharp metal edges that are exposed. (ECF No. 88-1 at 38.) Buchanan (who is not a defendant) responded to the informal level grievance. (*Id.* at 44.) In his first level grievance, Plaintiff reiterated that the doors did not close and had sharp metal edges that are exposed and cut hands. (*Id.* 39-41.) Baca responded to the first level grievance, but he did not address the issue with the doors. (*Id*. at 45.) Plaintiff repeated in his second level grievance that there were over 10 broken doors with exposed sharp edges. (*Id.* at 42-43.) Wickham (who is not a defendant) responded to the second level grievance by stating that the work was being done. (ECF No. 88-1 at 46.)

Plaintiff raises a genuine dispute of material fact as to whether there were broken doors with exposed sharp edges that posed a safety risk, and whether enough was being done to address this issue. However, he only raises that dispute as to Baca. Plaintiff provides no evidence

that the other Defendants named in Count I—Ward, Walsh, Mooney, Mattice, or Dzurenda— were made aware of the issues with the doors.

Therefore, Defendants' motion for summary judgment should be denied as to this aspect of Plaintiff's Eighth Amendment conditions of confinement claim with respect to Baca, but granted as to Ward, Walsh, Mooney, Mattice, and Dzurenda.

### d. Ceiling

Fourth, Plaintiff claims that parts of the ceiling had fallen in and contained mold, mildew, and the droppings of pigeons and rodents.

There were no emails to maintenance about ceiling tiles leaking and falling between January 2018 and June of 2019. (Hoefling Decl., ECF No. 80-3 ¶ 8.)

Plaintiff states in his declaration that in June of 2018, he saw Mooney and Baca walking through the unit, and he spoke to Baca about the ceiling panels that had started leaking water and had fallen when the swamp cooler sprung a leak. (ECF No. 88 at 10 ¶ 8.)

Plaintiff has raised a genuine dispute of material fact as to whether he was exposed to contaminated ceiling panels; however, he asserts only that he advised Mooney and Baca of this issue. Therefore, Defendants' motion for summary judgment should be denied, but only as to Mooney and Baca, and the motion should be granted as to Ward, Walsh, Mattice and Dzurenda.

### e. Asbestos

Fifth, Plaintiff alleges that asbestos was used when NNCC was built, and has not been properly removed. Plaintiff claims that outside contractors were brought into the prison to perform work in the gym building, and asbestos warning signs were posted for the workers. Plaintiff contends that other areas of the prison contain asbestos which has not been removed. Plaintiff alleges that Baca and Ward were contacted, but they failed to make promised repairs.

17

According to Defendants, between 2017 and 2018, NDOC initiated a construction project to test the adhesive used in the NNCC gym floor tiles for asbestos. (Baca Decl., ECF No. 80-2 ¶ 6, Hoefling Decl., ECF No. 80-3 ¶ 10.) Asbestos was found in the adhesive, and NDOC hired a company to replace the NNCC gym floor. (Baca Decl., ECF No. 80-2 ¶ 6.) During that time, the walls throughout NNCC were tested for asbestos, but the only area containing asbestos was in the gym. (*Id*. ¶ 7.)

Plaintiff states that he was on the inmate paint crew, and he did not know what kind of materials he was working with until an outside contractor came in and asbestos warning signs were put up and the contractors wore protective equipment. Plaintiff claims he was working with the same materials without protection for almost two years. (ECF No. 88 at 13 ¶ 15.)

Plaintiff provides no evidence to refute Defendants' evidence that asbestos was only found in the adhesive in the gym floor. Nor does Plaintiff assert that he was working with the floor tiles in the gym floor at any point or that any of the Defendants was aware of the asbestos problem when he was working there. Therefore, Plaintiff has not raised a genuine dispute of material fact that Defendants were deliberately indifferent to his health or safety with respect to the asbestos, and summary judgment should be granted in Defendants' favor as to this aspect of Plaintiff's Eighth Amendment conditions of confinement claim.

**D. Qualified Immunity**

Finally, for those aspects of this action for which the court has not recommended that summary judgment be granted, Defendants argue they are entitled to qualified immunity.

In evaluating whether to grant qualified immunity, the "court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir.

2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

First, taking the facts in the light most favorable to Plaintiff, a fact finder could determine that the remaining Defendants violated Plaintiff's Eighth Amendment rights if they were aware of significant and prolonged issues with Plaintiff's unit's ventilation system, broken windows with shards of glass causing injuries to inmates, broken doors with exposed pieces of metal, and ceiling tiles that were contaminated and had fallen to the floor, and they failed to act to remedy these issues. Assuming Plaintiff's version of events, it was clearly established that these conditions could violate the Eighth Amendment. *See e.g. Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000) (prison officials have a duty to ensure inmates are provided adequate shelter, food, sanitation, and safety); *Keenan v. Hall,* 83 F.3d 1083, 1090 (9th Cir. 1996) (citation and quotation marks omitted) ("Inadequate ventilation and air flow violates the Eighth Amendment if it undermines the health of inmates and sanitation of the penitentiary."); *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) (subjecting "a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment.").

Therefore, Defendants are not entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Plaintiff's request for voluntary dismissal of the retaliation claims against Sorich and Joncas in Count II;

(2) **DENYING** Plaintiff's request to deny or hold in abeyance Defendants' motion for summary judgment under Rule 56(d); and

(3) **GRANTING** Defendants' motion for summary judgment (ECF No. 80) as to:

(a) the Eighth Amendment deliberate indifference to serious medical needs claims in Count II against Dr. Naughton and Sorich, and the Eighth Amendment conditions of confinement claim against Walsh in Count III because Plaintiff failed to exhaust his administrative remedies as to these claims;

(b) the Eighth Amendment conditions of confinement claim in Count I concerning ventilation against Walsh and Dzurenda;

(c) the Eighth Amendment conditions of confinement claim in Count I concerning broken windows against Walsh and Dzurenda;

(d) the Eighth Amendment conditions of confinement claim in Count I concerning broken doors against Ward, Walsh, Mooney, Mattice, and Dzurenda;

(e) the Eighth Amendment conditions of confinement claim in Count I concerning ceiling tiles against Ward, Walsh, Mattice and, Dzurenda;

(f) the Eighth Amendment conditions of confinement claim in Count I concerning asbestos against Baca, Ward, Walsh, Mooney, Mattice, and Dzurenda; and

(4) **DENYING** Defendants' motion for summary judgment as to:

(a) the Eighth Amendment conditions of confinement claim in Count I concerning ventilation against Baca, Ward, Mooney, and Mattice;

(b) the Eighth Amendment conditions of confinement claim in Count I concerning broken windows against Baca, Ward, Mooney, and Mattice;

(c) the Eighth Amendment conditions of confinement claim in Count I concerning broken doors against Baca; and

(d) the Eighth Amendment conditions of confinement claim in Count I concerning ceiling tiles against Mooney and Baca.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 18, 2022

_____
Craig S. Denney
United States Magistrate Judge